IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

v.                                             Case No. 23CR-20050-DDC

**JOSEPH ISAAC,**

        **Defendant.**

**NOTICE OF INTENT TO INTRODUCE EVIDENCE
PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b) AND MOTION IN LIMINE**

      The United States of America, by and through Assistant United States Attorney David P. Zabel and Special Assistant United States Attorney Taylor Hines, hereby provides Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b). The government further moves, *in limine*, for a preliminary order from the Court finding the proposed evidence admissible. In support of the government's position, that such evidence is admissible in the government's case in chief as F.R.E. 404(b) evidence and/or intrinsic evidence of the crimes charged, the government offers the following:

**I.    BACKGROUND**

      On August 23, 2023, Defendant was indicted for possession of a machinegun, in violation of 18 U.S.C. § 922(o) (Count 1); felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 2). (Doc. 1.) The government did not seek pretrial detention, and Defendant was released on conditions of release. (Docs. 5-6.) A motion to suppress (Doc. 42) and two motions to dismiss (Docs. 40-41) were litigated and, after an evidentiary hearing, all three motions were denied. (Doc. 65.) This case is currently set for jury trial, to commence on March 9, 2026. (Doc. 72.) Upon request of the parties, the Court set a deadline for the Government's

Federal Rule of Evidence 404(b) notice and Defendant's response. (Doc. 71.)

## II.     SUMMARY OF EVIDENCE TO BE ESTABLISHED AT TRIAL

<u>Defendant's Prohibiting Conviction and Sentence</u>

On September 21, 2015, Defendant Joseph R. Isaac (hereafter "Defendant"), was arrested in Grand Rapids, Michigan for Armed Robbery, Conspiracy to Commit Armed Robbery, and Felony Offence with a Firearm. Defendant was convicted of Robbery – Armed, in the 17th Judicial Circuit, Kent County, Michigan, case number 15-10577-FC. On July 12, 2016, Defendant was sentenced to 4 to 20 years' imprisonment and he served approximately two years in prison.[1] This conviction and sentence prohibited Defendant from possessing any firearm or ammunition. *See* 18 U.S.C. § 922(g)(1). Defendant was released from prison on or about September 19, 2019. He was then placed on parole and his parole expired on September 19, 2021.[2]

<u>Investigation Prior to October 19, 2022</u>

The Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) investigation into suspected illegal activities of Defendant began on June 18, 2022, when an anonymous tipster provided the Kansas City ATF Field Division two photos of Defendant possessing a pistol with a full auto "switch" (machinegun conversion device, hereafter "MCD") affixed to the rear of the pistol slide. Investigation of Defendant's social media posts showed him posing with firearms, including semi-automatic weapons converted to automatic weapons (these meet the federal definition of a "machinegun"), as early as September 19, 2020. This was exactly one year after

---

[1] Although Defendant was under the age of 18 when this offense was committed (18 when he was sentenced), he was convicted and sentenced as an adult. At the time of Defendant's prosecution, Michigan considered anyone 17 years of age or older an adult for purposes of violations of Michigan criminal law.
[2] It is an element of 18 U.S.C. § 922(g)(1) that the defendant has been previously convicted of a crime punishable by more than one year imprisonment and that he had knowledge of this. Defendant served more than one year. Therefore, absent an *Old Chief* stipulation, the government will be prepared to admit this evidence.

his release from prison and while still on parole.  Social media posts showed he consistently possessed, and fired, such firearms until October 19, 2022, the day of the charged offense where Defendant possessed several firearms, including a machinegun.

Defendant's social media posts prior to October 19, 2022, include, but are not limited to, the following:

| Date | Description of Post |
|---|---|
| 9/19/20 | Facebook post showing Defendant standing in a hallway with a pistol in his front right pants pocket.  The area near the rear of the slide, where an MCD would be affixed, is edited and no longer visible. |
| 10/20/20 | Facebook post showing Defendant seated in a chair and wearing a white face mask with two black pistols with extended magazines on his lap.  Two additional pistols with extended magazines are on the floor in front of him. |
| 10/25/20 | Facebook post showing Defendant with an item that is edited out but has an extended magazine protruding from it. |
| 10/31/20 | Facebook post showing Defendant with an item that is edited out with "CENSORED" over the item but has an extended magazine protruding from it. |
| 11/16/20 | Facebook post showing Defendant posing with what appears to be an AR-15 style pistol on the floor in front of him.  Part of the pistol is edited out, but a buffer tube and the base of an extended magazine are visible. |
| 2/23/21 | Facebook post showing Defendant with a pistol with a drum magazine protruding from his right front pants pocket. |
| 3/26/21 | Facebook post showing Defendant sitting on stairs with a pistol on a stair under his right leg. |
| 5/22/21 | Facebook post showing Defendant posing with two pistols with extended magazines on floor in front of him. |
| 6/17/21 | Facebook post showing Defendant holding a pistol with an extended magazine held against his face. |
| 7/4/21 | Facebook post showing Defendant posing with two pistols clutched against his abdomen, one of which has an extended magazine. |
| 7/26/21 | Facebook post showing Defendant with two pistols with extended magazines aimed at the camera.  Through the barrel of one of the pistols, a round of polished brass hollow point ammunition is visible, chambered within the pistol. |
| 9/7/21 | Facebook post showing Defendant with two pistols with extended magazines in his left hand. |
| 9/29/21 | Facebook post showing Defendant holding an infant in his right arm with an extended magazine protruding from his front waistline. |
| 10/7/21 | Facebook post showing Defendant posing with two pistols with drum magazines.  One magazine is transparent and multiple rounds of ammunition are visible within it. |

| | |
|---|---|
| 11/20/21 | Facebook post showing Defendant holding two pistols upside down from the base of extended magazines. |
| 12/4/21 | Facebook post with multiple photos of Defendant posing in a convenience store while holding a Glock model 27, .40 caliber pistol with an extended magazine. (Except for the absence of a "Glock switch" (MCD), this pistol is consistent with the machinegun recovered from Defendant's vehicle on 10/19/22.) |
| 1/15/22 | Facebook post with multiple photos of Defendant with two pistols, both with extended magazines and 8 additional pistols with extended magazines on a cabinet behind him. One pistol appears to be inserted into a "carbine conversion kit" apparatus that allow the pistol to be more easily fired with either two hand support or shoulder support like a rifle. Affixed to the rear of this pistol's slide is a full-auto "Glock switch" (MCD) that converts the pistol into a machinegun. In additional photos, 21 different firearms are visible, to include a pistol with a full-auto "Glock switch" (MCD) affixed to it. |
| 2/4/22 | Facebook post showing Defendant wearing a face covering and hooded sweatshirt with "SWITCHES" printed on it and holding a pistol in his left hand. The black block affixed to the rear of the pistol's slide is consistent with a full-auto "Glock switch" (MCD). |
| 2/17/22 | Facebook post with multiple photos of Defendant posing with 8 different pistols. Two are in his right hand with the remaining 6 pistols on the floor in front of him. Two pistols appear to be loaded with 50-round drum magazines and the remaining 6 have extended magazines inserted in them. The pistol in the center of the first photo is surrounded by 16 votive candles and a silver full-auto "switch" (MCD) is affixed to the rear of the slide. |
| 3/24/22 | Facebook post showing Defendant holding a pistol with a holographic slide. A second pistol with a drum magazine inserted into it is on the counter in front of him. |
| 4/10/22 | Series of photos on Defendant's Instagram account showing him in a vehicle holding a black, small-framed, pistol with an extended magazine. |
| 4/14/22 | Series of photos on Defendant's Instagram account showing him holding a black and red AR-15 style pistol with an extended magazine. |
| 4/16/22 | Photo on Defendant's Instagram account showing him seated on a stool with a black and red AR-15 style pistol with an extended magazine and a black pistol with an extended magazine sitting on a counter directly behind him. |
| 5/16/22 | Series of photos on Defendant's Instagram account showing him holding an AK-47 style pistol with an extended magazine with individual rounds of ammunition visible through the clear panel in the side of the magazine. |
| 5/19/22 | Facebook post with a series of photos. One showing Defendant posing while holding a pistol with an exposed gold barrel and another showing defendant posing with an AR-15 style pistol. |
| 5/30/22 | Photo on Defendant's Instagram account showing him holding an AK-47 style pistol with an extended magazine and a large stack of U.S. currency. |
| 8/5/22 | Video on Defendant's Instagram account showing him rapping while wearing a shoulder holster for a pistol that contained a black pistol with an extended magazine. In one frame, Defendant points the firearm at the camera. |

| | |
|---|---|
| 8/15/22 | Series of photos (and one video) on Defendant's Instagram account showing him possessing 8 different pistols, two in his right hand and 6 on the floor in front of him. Two pistols appear to be loaded with 50-round drum ammunition magazine and the remaining 6 have extended magazines. One of the pistols has a full-auto "Glock switch" (MCD) affixed to the rear of the slide. |
| 8/17/22 | Video on Defendant's Instagram account showing dancing in front of a mirror while brandishing an AK-47 style pistol with an extended magazine. |
| 8/30/22 | Facebook post with a series of photos with captions indicating Defendant gave an AK-47 type pistol to his friend for his friend's birthday. A photo shows Defendant and his friend posing with multiple firearms while standing on a pool table. Three additional firearms are visible on the pool table behind them. |
| 9/7/22 | Facebook post made by another person showing Defendant holding and firing multiple firearms while wearing a balaclava covering his face. Defendant is identifiable by his signature jewelry, overall physique, and clothing. In one clip, Defendant's face is partially visible while shooting a rifle. A Facebook page of the person who posted the videos on Defendant's Facebook page depicted, this same day, photos of Defendant, without a face covering, wearing the same clothing and jewelry he was wearing in the posts where he is firing firearms. |
| 9/29/22 | TikTok video posted portraying narrative that Defendant was gifting a 2023 Chevy Camaro to a newly signed artist identified by the moniker "81 Woo." Defendant seen sitting in his 2022 Jeep Cherokee Trackhawk and then seen delivering a blue Camaro to "81 Woo." Defendant is wearing an empty double shoulder holster and carrying a Draco AK47-sytle pistol with an extended magazine in his right hand. The vehicle was the subject of a fleeing and eluding law enforcement incident on 9/27/22 in Kanas City, Missouri. The license plate was reported stolen on 7/25/22 in Blue Springs, Missouri. |

In addition, friends of Defendant posted videos of Defendant and others firing firearms, including machineguns, at a firearms' range in what appeared to be a limestone cave on September 7, 2022. This range was determined to be "GunLabKC." Further investigation revealed this range was likely rented for use by Defendant.

In addition to social media posts depicting Defendant with firearms, including machineguns, he participated in social media conversations about machinegun conversion devices (MCDs). For instance, on December 2, 2021, Defendant participated in a Facebook conversation with another individual in which Defendant negotiated the purchase of MCDs from a seller. On January 18, January 27 through January 29, 2022, Defendant had Facebook

5

conversations with and individual ("Myrtle Blocc") who was selling Glock pistols and MCDs. Defendant asked, "Wassup with the button" (slang for an external MCD). The Facebook conversation with "Myrtle Blocc" resumed on March 31, 2022 and Defendant against inquired, "Yea & wassup with the buttons" (MCDs) and "Myrtle Blocc" stated, using slang, that a friend of his was arrested with MCDs and so "we need to 3D them mfs" (produce MCDs using a 3-D printer). The references to "button" are to the same style of MCD that was on the Glock .40 caliber pistol, model 27, recovered from Defendant's vehicle on October 19, 2022.

The investigation revealed, prior to October 19, 2022, that Defendant owned and drove a 2021 Jeep Grand Cherokee Track Hawk bearing Kansas temporary license plate number C993655. Prior surveillance and social media posts demonstrated this was Defendant's vehicle. A Kansas Department of Revenue search revealed the vehicle was registered to "Sleazy Word Entertainment, LLC," Defendant's record company.

Investigation on October 19, 2022

On October 19, 2022, Bureau of Alcohol, Tobacco, and Firearms (ATF) special agents (SA) and task force officers (TFO) surveilled and followed a brown/champagne 2021 Jeep Grand Cherokee Track Hawk (hereafter "vehicle" or "Defendant's vehicle") bearing Kansas Temporary License Plate C993655. Prior surveillance efforts coupled with Defendant's social media posts confirmed this vehicle was owned and operated by Defendant. In addition, a Kansas Department of Revenue search revealed the vehicle was registered to "Sleazy World Entertainment LLC," Defendant's record company.

Investigators followed the vehicle to a townhome complex on North Coy Street in Kansas City, Kansas. It was known at this time that Defendant resided at a house in Parkville, Missouri. However, a townhome at the North Coy Street complex appeared to be associated with

Defendant in some way. The vehicle turned into a parking lot that services the entire townhome complex, which consisted of seven buildings each containing two townhome units.

From a public road adjacent to the townhome complex parking lot, TFO Nicholas Horine observed Defendant exit one of the townhomes and approach the passenger side of his vehicle. Another male[3] accompanied Defendant and took photos of Defendant. The male accessed another vehicle and retrieved an AK-47 style rifle and then got into Defendant's vehicle with the rifle.

The vehicle left the townhome complex and drove to Kansas City, Missouri and then eventually crossed back into Kansas City, Kansas using I-670/I-70. Investigators followed the vehicle to an address in Parkville, Missouri where Defendant existed the vehicle and entered the residence via the garage door. After a short time, the vehicle left and proceeded back to the townhome complex at 340 North Coy Street in Kansas City, Kansas. TFO Horine set up on a public street from where he could view the entire townhome complex parking lot, including the location where Defendant parked his vehicle, from this public street.

Shortly thereafter, known associates of Defendant and his record company began arriving at or exiting from the townhome complex parking lot. Several individuals were armed with firearms. Investigators observed Defendant exit his vehicle from the driver's seat and walked to the rear of the vehicle. As Defendant turned to walk on the passenger side of the vehicle, TFO Horine observed a black pistol in his right hand. TFO Horine observed Defendant access the passenger seat area of the vehicle several times. TFO Horine observed Defendant with an AK-style pistol, commonly referred to as a "Mini Draco" or "Micro Draco" that he retrieved from the passenger side of the vehicle. A black stick-like object was observed sticking out of Defendant's

---

[3] The identity of this person is known but because he has not been indicted, the Government is not listing his name in this notice.

right front pants pocket while he was handling the AK-style pistol. The object was consistent with an extended magazine for a pistol. The same pants pocket this object was protruding from had a firearm-shaped bulge.

Based on these observations, ATF Special Agent James Payne contacted Sergeant Carter with the Kansas City, Kansas Police Department (KCKPD) Special Operations Unit (SOU). SA Payne explained the observations made by investigators to Sergeant Carter and requested that the SOU detain Defendant based on him being observed with multiple firearms and the fact he was a convicted felon. At this point, ATF investigators did not plan on intervening or making their presence known. This decision was based on the desire to conceal to Defendant and others knowledge of the ongoing federal firearms investigation, which involved many suspects in addition to Defendant. SOU officers attempted to contact Defendant. However, upon observing the police, Defendant and several of his associates immediately fled on foot into one of the townhomes. TFO Horine observed that when Defendant entered the townhome, he did not have the Mini-Draco he previously had outside his vehicle. In addition, he did not have the AK-47 style rifle that had previously been placed in his vehicle by the other person and had never been removed. Based on the size of the pistol, TFO Horine could not tell if Defendant possessed this when he entered the townhome or whether it was also still in his vehicle. However, he knew it had to be one of those two locations.

A perimeter was set up around the townhome Defendant and others entered. While it was already known that Defendant's vehicle contained firearms, Sergeant Carter looked through one of the vehicle's windows (using his iPhone camera to assist due to heavy window tint) to confirm that no individuals were inside the vehicle. When doing this, Sergeant Carter observed multiple

firearms inside the vehicle. Again, investigators already knew, with certainly, that at least two and potentially three firearms were in the vehicle.

Officers attempted to speak to Defendant through the front door of the townhome, but this effort was impeded by the verbal interruptions of other individuals inside the townhome. Special Agent Payne estimated to be 12 to 15 individuals inside the townhome at this time. Because Defendant's vehicle was locked, SA Payne advised Defendant (while speaking to him through the door of the townhome) that firearms in his car were going to be recovered by law enforcement. Defendant stated he wished to speak with his lawyer and SA Payne told Defendant he would be allowed approximately two minutes to decide if he was going to open the vehicle for law enforcement. After approximately five minutes, it became clear that Defendant was not going to open the vehicle for investigators. Therefore, a window punch tool was used to destroy the front driver's window of the vehicle. This activated the vehicle alarm, but the alarm was then deactivated, presumably by someone inside the townhome with a key fob.

Inside the vehicle, investigators recovered the following four firearms: (1) a Glock .40 caliber pistol, model 27, with serial number PEB668 (hereafter "Glock 27"); (2) a Romarm/Cugir 7.62x39mm caliber pistol, model Micro Draco, with serial number ROA21PMD25919; (3) a Romarm/Cugir 7.62x39mm caliber pistol, model Micro Draco, with serial number ROA22PG2374); and (4) a Citizens Armory of Mexico 7.62x39mm rifle, with serial number 1977HP0511.[4] The Glock 27 was determined by an ATF Firearms Enforcement Officer to have a MCD, commonly referred to as a "Glock Switch" or "switch," installed as a replacement of the slide cover plate. This device alone constitutes a "machine gun" under 18 U.S.C. § 922(o) and 26 U.S.C. § 5845(b). However, the Glock 27 was test fired and determined

---

[4] Although this firearm was inside Defendant's vehicle, an associate (known to investigators) was observed with the firearm and so the Government elected not to list this firearm in Count 2 of the Indictment. (*See* Doc. 1, Count 2.)

to fire multiple rounds by a single function of the trigger. This also meets the definition of a "machinegun." *Id.*

Defendant's known DNA was determined by a forensic scientist to be consistent with DNA from swabs of one of the Romarm/Cugir pistols (Mini/Micro Draco) with an estimated probability of 1 in 583 billion. Defendant's known DNA was determined by a forensic scientist to be consistent with DNA from swabs of the Glock 27 pistol with an estimated probability of 1 in 9 quintillion.

### III.   ARGUMENT

The government intends to seek the admission of witness testimony and exhibits that establish the defendant possessed firearms, including machineguns, prior to the charged offense conduct on October 19, 2022. This evidence is admissible pursuant to Federal Rule of Evidence (F.R.E) 404(b). In addition, the government believes this evidence is admissible independent of F.R.E. 404(b) because it is intrinsic evidence that is part of the narrative of the crime charged.

#### A.   The Proffered Evidence is Admissible Pursuant to F.R.E. 404(b)

The framework for analysis under F.R.E. 404(b) is well established. Federal Rule of Evidence 404(b) is a rule of inclusion, not exclusion. *Huddleston v. United States*, 485 U.S. 681, 688-89 (1988). To be admissible under Rule 404(b): (1) the evidence must be offered for a proper purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; (2) the evidence must be relevant (Rule 401); (3) the probative value of the evidence must not be substantially outweighed by danger of unfair prejudice (Rule 403); and (4) if requested, a cautionary instruction is given (Rule 105). *Id.* Evidence essential to the context of the crime is considered intrinsic and does not fall under the limitations laid out in Rule 404(b). *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir.

2011).

### i. The evidence is being offered for a proper purpose.

Here, the proposed evidence will be offered for distinctly non-propensity purposes. It will be offered to establish, amongst other things, the defendant's opportunity to possess firearms, including machineguns, as evidenced by his consistent posting of photos and videos depicting himself with guns. It will be offered to establish his knowledge that the machinegun he possessed on October 19, 2022 was, indeed, a machinegun. It will be offered to establish that he did not mistakenly possess three firearms on October 19, 2022, including the machinegun. It will also be offered to establish the complete narrative of the crimes charged. These are all long-recognized, non-propensity purposes justifying admission of this evidence pursuant to Rule 404(b).

Although not explicitly written in Rule 404(b), the need to tell a coherent narrative at trial is also a well-recognized purpose for the admission of evidence, as the Supreme Court noted in *Old Chief v. United States*:

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Old Chief v. United States*, 519 U.S. 172, 189 (1977).

The proposed evidence is being offered for the proper purpose of establishing that the defendant had motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, in the case at issue.

11

### ii. The evidence is relevant.

Federal Rules of Evidence 401 and 402 establish that relevant evidence, that which makes the existence of any fact at issue more or less probable, is admissible unless the Federal Rules of Evidence provides otherwise. *Huddleston*, 485 U.S. at 687. The question of whether evidence is relevant for a permissible purpose under Rule 404(b) is left to the discretion of the trial court. The tests for admission under both F.R.E. 401 and 403 are also given deference upon review. *United States v. Robinson*, 978 F.2d 1554, 1561-1562 (10th Cir. 1992), cert. denied, 507 U.S. 1034 (1993). While the Government is required to articulate the relevance of the 404(b) evidence, the burden is not onerous. *United States v. Sampson*, 980 F.2d 883, 888 (3rd Cir. 1992). Some showing of a proper relevance is all that is needed. *Id*.

Evidence of other illegal conduct is relevant, particularly "when the [other] misconduct is close in time and similar in method to the charged crime." *United States v. Conway*, 73 F.3d 975, 981 (10th Cir. 1995). There is no set rule regarding the age of prior acts. *United States v. Sturmoski,* 971 F.2d 452, 459 (10th Cir. 1992); *see United States v. Franklin,* 704 F.2d 1183, 1189 (10th Cir. 1983); *see also United States v. Cuch,* 842 F.2d 1173, 1178 (10th Cir. 1988). Instead, the facts and circumstances of each case must be examined. *Id.* Prior acts that occurred two to three years earlier have been found to be admissible. *See United States v. Record*, 873 F.2d 1363, 1372-76 (10th Cir. 1989); *United States v. Edwards*, 69 F.3d 419, 436 (10th Cir. 1995). In *United States v. Wacker*, the Tenth Circuit Court of Appeals held that there was no "'absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the facts and circumstances of each case.'" *United States v. Wacker*, 72 F. 3d 1453, 1469 (10th Cir. 1995) (*citing Cuch*, 842 F. 2d at 1178, quoting *United States v. Franklin*, 704 F. 2d 1183, 1189 (10th Cir. 1983)).

Although the Government will present other evidence, aside from other bad acts, to prove that defendant committed the crimes charged, his other bad acts are "dependable proof" of his motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident related to his knowing possession of firearms, including one machinegun, on October 18, 2023. Therefore, such evidence is reasonably necessary to the Government's case.

Defendant's social media posts show a continuing course of conduct that started no later than September 19, 2020, and continued until his possession of firearms on October 19, 2022. The above table demonstrates that he consistently possessed firearms, including machineguns, and there was no appreciable break in the defendant's illegal conduct (possessing firearms, including machineguns) between the commencement of this activity on September 19, 2020, and his possession of the firearms alleged in the Indictment on October 19, 2022. Such evidence is highly probative to addressing whether he *knowingly* possessed firearms recovered from his vehicle. This evidence also is highly probative to addressing whether he *knowingly* possessed the machinegun recovered from his vehicle.

### iii. The probative value of the evidence is not substantially outweighed by danger of unfair prejudice.

The probative value of the evidence outweighs any prejudice to the defendant and is necessary to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident when circumstances are so similar between the offense at issue and prior burglary and home invasion. *See Conway*, 73 F.3d at 981. Accordingly, any prejudicial impact must be extremely heavy for the evidence to be deemed inadmissible. *Id.* The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value. *United States v. Reddeck,* 22 F.3d 1504, 1508 (10th Cir. 1994); *United States v. Esch*, 832 F.2d 531, 535 (10th Cir. 1988).

Federal Rule of Evidence 403 permits a district court to exclude relevant evidence only if the evidence's probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. "Unfair prejudice" refers to an undue tendency to suggest a decision on an improper basis. See Fed. R. Evid. 403, Advisory Committee Notes. The fact that Rule 403 is an exception to the mandatory admission of relevant evidence means that exclusion of evidence under Rule 403 should be used sparingly. *Blancha v. Raymark Industries*, 972 F.2d 507, 516 (3d Cir. 1992); Joseph M. McLaughlin, Jack B. Weinstein, Margaret A. Berger, Weinstein's Federal Evidence, § 403.02[2][a] at 403-11 (2d Ed. 1997) (Weinstein).

Here the probative value of the evidence is high, and it deals with multiple facts of consequence, often overlapping. The government believes that it can put on evidence of the previous crimes in a concise narrative through records and witness testimony. In any event, given the strong, non-propensity purposes for the offered evidence, and the fact the risk of unfair prejudice is limited, the offered evidence easily surpasses the minimal gateway threshold provided in Rule 403.

### iv. A cautionary instruction should be given.

The Supreme Court stated in *Huddleston* that a trial court may protect against potential prejudice in the admission of Rule 404(b) evidence by, among other things, giving the jury a limiting instruction "upon request" as provided for by Fed. R. Evid. 105. *United States v. Record* 873 F.2d 1363, 1376 (10th Cir. 1989) (citing *Huddleston,* 485 U.S. at 692 (emphasis added)). If the above-described evidence is admitted only pursuant to Rule 404(b), the government would endorse such an instruction.

### B. Non-404(b) Evidence Considerations

Federal Rule of Evidence 404(b) "only applies to evidence of acts extrinsic to the charged

14

crime." *United States v. Irving*, 665 F.3d 1184, 1211 (10th Cir. 2011). "Evidence is extrinsic 'when it is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *United States v. Cushing*, 10 F. 4th 1055, 1075 (10th Cir. 2021) (quoting *United States v. Kupfer*, 797 F.3d 1233, 1248 (10th Cir. 2015)).

In addition to offering the above evidence as 404(b), the government is offering the pictures and videos as part of intrinsic evidence of the crimes charged. Much of the conduct referenced above is not the type of evidence that needs to be analyzed under Federal Rule of Evidence 404(b). Instead, the photos and videos posted to social media are "intimately connected or blended with the factual circumstances of the charged offense" and, therefore, are acts intrinsic to the charged offense.

This is particularly true considering many of the firearms Defendant posed with in social media posts are very similar to, if not identical to, firearms recovered from his vehicle on October 19, 2022. A video from Defendant's Instagram account depicts him holding AK-47-style pistol with dark brown wood grips. This firearm is consistent with two of the firearms recovered from Defendant's vehicle on October 19, 2022. Several videos from Defendant's Instagram account shows him with a Glock pistol with an affixed "Glock Switch" (MCD) that appears identical to the Glock .40 caliber pistol, model 27 (converted to a machinegun), that was recovered from Defendant's vehicle on October 19, 2022. In one of these videos, a partial serial number for the pistol is visible and was consistent with the serial number (PEB668) of the machinegun recovered from Defendant's vehicle on October 19, 2022.

There is not always bright line separating evidence that is admissible because it is inextricably intertwined with the facts of the case and with evidence that is admissible under 404(b). *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995). However, intrinsic

evidence is that which is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011) "[O]ther act evidence is intrinsic—and thus not subject to Rule 404(b)—when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Id*. (quoting *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993)) (internal citations omitted).

> Indications that evidence is intrinsic include situations in which the evidence [1] was inextricably intertwined with the charged conduct, [2] occurred within the same time frame as the [charged] activity . . . , [3] was a necessary preliminary to the charged [activity], [4] provided direct proof of the defendant's involvement with the charged crimes, and [5] was entirely germane background information, directly connected to the factual circumstances of the crime, or [6] was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice.

*United States v. Cushing*, 10 F.4th 1055, 1075-76 (10th Cir. 2021). Several of the "indications" set forth by the Tenth Circuit in *Cushing* are present here.

Although the government is prepared to admit all the above-described evidence pursuant to F.R.E. 404(b), with an appropriate limiting instruction, some of the Defendant's social media posts, particularly those depicting firearms that may be the firearms recovered from his vehicle on October 19, 2022. These posts could, in particular, could appropriately be admitted as intrinsic evidence to the charged offenses, which would negate needing to give a limiting instruction.

                                                  Respectfully submitted,

                                                  RYAN KRIEGSHAUSER
                                                  United States Attorney

/s/ *David Zabel*
David P. Zabel
Assistant United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6688 (telephone)
Ks. S. Ct. No. 17887

/s/ *Taylor Hines*
Taylor Hines
Special Assistant United States Attorney
District of Kansas
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6688 (telephone)
Ks. S. Ct. No. 28101

17

**Certificate of Service**

  I hereby certify that on December 22, 2025, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following: any attorney entering their appearance on behalf of the defendant in the above-captioned case.

                */s/ David P. Zabel*
                David P. Zabel
                Assistant United States Attorney